# In the United States Court of Federal Claims

No. 13-152C
(Filed:  April 14, 2015)

|  |  |  |
|---|---|---|
| AIRPORT ROAD ASSOCIATES, LTD., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Partial Motion to Dismiss; Statute of Limitations; ELIHPA; Request to Prepay Mortgage; Affordable Housing; Breach of Contract |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

*Jeff H. Eckland*, Minneapolis, MN, for plaintiffs. *Mark J. Blando* and *Vince Reuter*, Minneapolis, MN, of counsel.

*Matthew Roche*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director.  *Leigha Gordillo*, United States Department of Agriculture, Office of General Counsel, Washington, DC, of counsel.

## OPINION ON MOTION TO DISMISS

**FIRESTONE**, *Judge*.

Pending before the court is the motion of the defendant, the United States, to

dismiss ten plaintiffs from the pending litigation for lack of subject matter jurisdiction.

The government argues that the court does not possess jurisdiction to entertain the claims

brought by ten of the twenty-three plaintiffs in this case, Bayou des Glaises, Ltd.;

Bloomfield Partnership II; Clifford E. Olsen – College Towne; Clifford E. Olsen –

Collins Square; Clifford E. Olsen – Hammond Towne; Clifford E. Olsen – Jefferson

South; Clifford E. Olsen – Old Man River; Clifford E. Olsen – Walker Partnership;

Clifford E. Olsen 1977-B; and Cypress Cove Association (collectively, "the partnership")

on the grounds that these plaintiffs filed their breach of contract claims more than six

years after the claims accrued. [1]   For the reasons stated below, binding precedent from

the Supreme Court and the Federal Circuit compels this court to find that the statute of

limitations has run for the above-named plaintiffs.  Therefore, the government's Partial

Motion to Dismiss is **GRANTED**.

## I.     BACKGROUND

### A.     The Housing Act and the Emergency Low Income Housing Preservation Act

Plaintiffs are property owners who entered into loan agreements with the Farmers

Home Administration ("FmHA") between 1979 and 1990, pursuant to sections 515 and

521 of the Housing Act of 1949, 42 U.S.C. §§ 1485, 1490a ("Housing Act"), for the

development of low and moderate income housing.  Under the Housing Act, housing

owners are issued subsidized loans at favorable interest rates in exchange for an

agreement to rent units to qualified low-income, elderly, and disabled rural residents for

the duration of the loan.  42 U.S.C. § 1490.  Pursuant to the Housing Act, the plaintiffs in

this case each entered into a fifty-year mortgage with the government.  Pl.'s Opp. 2.  As

part of the mortgage agreement, plaintiffs agreed to a twenty-year restrictive use

---

[1] The government initially moved to dismiss the claims of an eleventh plaintiff, Delta Square. However, in its supplemental brief, the government conceded that the statute of limitations has not run as to that plaintiff.  *See* Section II.D.

covenant, which required that they stay in the section 515 program for twenty years.

However, after the twenty-year period had elapsed, plaintiffs and other borrowers under

the Housing Act had a contractual right to prepay their loans and leave the program,

ending the borrower's obligation to rent to qualified individuals. *See Franconia*

*Association v. United States*, 536 U.S. 129, 135 (2002).

The breach of contract at issue in this case arises from the enactment, in 1988, of

the Emergency Low Income Housing Preservation Act, 42 U.S.C. § 1472 ("ELIHPA").

Concerned that the number of borrowers who were exercising their pre-payment option

was threatening the goals of the program, Congress restricted the prepayment of section

515 mortgages that were entered into before December 21, 1979. *See Franconia*, 536

U.S. at 136 (citing H.R.Rep. No. 100-122, p. 53; U.S. Code Cong. & Admin. News 1987,

pp. 3317, 3369).   Under ELIHPA and its corresponding regulations, before the FmHA

can accept prepayment of a section 515 mortgage,

> [FmHA] shall make reasonable efforts to enter into an agreement with the
> borrower under which the borrower will make a binding commitment to
> extend the low income use of the assisted housing and related facilities for
> not less than the 20-year period beginning on the date on which the
> agreement is executed.

42 U.S.C. § 1472(c)(4)(A).  ELIHPA provides that "the FmHA may include incentives in

such an agreement, including an increase in the rate of return on investment, reduction of

the interest rate on the loan, and an additional loan to the borrower." *Tamerlane, Ltd. v.*

*United States*, 550 F.3d 1135, 1138 (Fed. Cir. 2008) (quoting *Franconia,* 536 U.S. at 136

(citing 42 U.S.C. § 1472(c)(4)(B)).  If the borrower and the FmHA cannot reach an

agreement after a "reasonable period," the borrower seeking prepayment must "offer to

sell the assisted housing and related facilities involved to any qualified nonprofit organization or public agency at a fair market value."   42 U.S.C. § 1472(c)(5)(A)(i). "An offer of prepayment may be accepted if such an offer to buy the property is not made within 180 days." *Tamerlane*, 550 F.3d at 1138 (quoting 42 U.S.C. § 1472(c)(5)(A)(ii)). The regulations implementing ELIHPA create a process for the FmHA's determination of prepayment requests, by which the FmHA "'develops an incentive offer,' making a 'reasonable effort . . . to enter into an agreement with the borrower to maintain the housing for low-income use that takes into consideration the economic loss the borrower may suffer by foregoing [sic] prepayment.'" *Franconia,* 536 U.S. at 137 (quoting 7 C.F.R. § 1965.210).  This "cumbersome" process takes several years and ends "far more often than not" with the "prepayment request [being] rejected." *Franconia Associates v. United States* ("*Franconia II*"), 61 Fed. Cl. 718, 733 n. 21 (2004).

On June 10, 2002, the Supreme Court in *Franconia Association v. United States* held that enactment of ELIHPA resulted in the repudiation of the bargains entered into before its enactment.  *Franconia*, 536 U.S. at 135.  The court held that ELIHPA's enactment "qualified as a repudiation of the parties' bargain, not a present breach of the loan agreements." *Id.* at 133.  A plaintiff therefore has the option to treat ELIHPA as an anticipatory repudiation, and may file suit before the time the government's performance (i.e. accepting the prepayment) is due under the contract.  *Id.* at 143.  However, the six-year statute of limitations may also run from the date "when a borrower tenders prepayment and the Government then dishonors its obligation to accept the tender and release its control over use of the property that secured the loan." *Id.* at 144.  Therefore,

the breach and consequential commencement of the six-year statute of limitations "would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." *Id*. at 143.

### B.    Factual Background

On April 2, 2002, Clifford E. Olsen, the common general partner to eleven plaintiffs in this case, submitted a letter to Yvonne Emerson, the agency's multi-family housing regional director, requesting to prepay the loans for eleven of the twenty-three properties at issue in this case.  The letter stated, as follows:

> We ask that you approve[] our request to pay off the mortgage(s) on the above-captioned developments.  We desire to retain a few of the developments and we have an arrangement with a local and national nonprofits to acquire the rest of the developments. Our intent is to convert these units into conventional housing.  As we understand the nonprofit's motive, they, too, are seeking conventional housing. The total unit count for all of the developments above is 462 units.

Def.'s Mot. App'x 1.   According to his declaration, Mr. Olsen had been in conversation with the Capital Area Legal Foundation ("Capital Legal"), an organization based in Baton Rouge, Louisiana, regarding a possible sale of the eleven properties. Olsen Decl. ¶ 5 (ECF No. 32-1).  Mr. Olsen understood that if the sale went through, Capital Legal intended to convert the buildings into conventional housing, which would require the mortgages on the properties to be prepaid.  *Id*. ¶ 7.  Mr. Olsen stated that because "it remained uncertain whether any of the sales would be consummated," he "did not specify any particular date by which the Partnership anticipated prepaying." *Id*. ¶ 8.

On April 17, 2002, Ms. Emerson responded, forwarding the forms necessary under the regulations for the pre-payment approval process under ELIHPA:

> This will acknowledge your letter dated April 2, 2002, regarding your
> request to pre-pay the following Rural Development loans.
> . . . .
> Please find enclosed a copy of RD Instruction 1965-E, Exhibit C,
> "Checklist for Requesting Prepayment" which must be completed for each
> loan you are requesting to pre-pay. The completed Exhibit C must be
> submitted along with the required items to the appropriate Rural
> Development servicing office responsible for servicing each particular loan.

Def.'s Mot. App'x 2.  However, the partnership did not submit a completed application

under ELIHPA in response to the agency's letter at that time.  Mr. Olsen explained that

he intended to complete the ELIHPA application forms only if "an agreement to sell was

reached on one or more of the Properties" and "the buyer confirmed that it desired to

remove the project from the Section 515 program and rent the units as conventional

housing."  *Id*. ¶ 6.  Because the deal with Legal Capitol ultimately fell through, the

partnership did not engage in any further correspondence in response to the agency's

April 17, 2002 letter.  *Id*. ¶¶ 20-22.

Mr. Olsen "continued to monitor market conditions [and] local economies" and, in

early 2011, determined that a group of projects were "good candidates for converting to

market."  *Id*. ¶ 23.  Consequently, Mr. Olsen decided "to pursue prepayment of those

properties so that they could be converted to conventional apartments."  *Id*.

On May 4, 2011, the partnership submitted a complete application under the ELIHPA

regulations for seven properties.  *See* Pl.'s Opp. Ex. D.  The government subsequently

offered an incentive package in the form of a loan on one of the properties, Jefferson

South, which Mr. Olsen accepted in January of 2013.  Pl.'s Opp. Ex. G.  According to

Mr. Olsen, the partnership also sent ELIHPA prepayment applications "on a handful of

other properties in the following months," but was "informed that the agency had changed its policies regarding incentives, and, in [Mr. Olsen's] situation, no incentives would be offered and no prepayments would be allowed."  Olsen Decl. ¶ 27.

On February 28, 2013, the plaintiffs filed this action seeking relief for alleged breach of contract.  The government has moved to dismiss the claims of the above-named plaintiffs who had an unfettered right to prepay in 2002, on the grounds that their claims began to accrue in April 2002 when the government failed to unconditionally accept their prepayment request.  The government argues that their claims, filed in 2013, are outside the six-year statute of limitations established in 28 U.S.C. § 2501.  Plaintiffs assert that the correspondence between the parties in April 2002 did not constitute a formal prepayment request and thus the statute of limitations did not begin to run in 2002.  Oral argument was held on April 1, 2015.

## II.   DISCUSSION

### A.   Standard of Review

In ruling on the government's motion to dismiss, the court assumes that all undisputed facts alleged in the complaint are true and will draw all reasonable inferences in the plaintiff's favor.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Where the defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

### B.  *Tamerlane* and *Franconia* Establish that Requiring a Borrower to Comply with ELIHPA is a Breach of the Borrower's Contract

It is not disputed that plaintiffs needed to file their complaint within six years of the date that their claims first accrued.  *See* 28 U.S.C. § 2501 ("Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").  It is also not disputed that a claim accrues when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (citations omitted) (internal quotation marks omitted).  The dispute between the parties, therefore, centers on when the claim accrued.

The government argues, based on the Supreme Court's decision in *Franconia* and the United States Court of Appeals for the Federal Circuit's decision in *Tamerlane*, that the claims of 10 plaintiffs are barred by the six year statute of limitations because the claims accrued when the government received Mr. Clifford E. Olsen's letter in April of 2002 and failed to unconditionally accept the prepayment request even though those plaintiffs had an unfettered right to prepay at the time under their contracts.

The plaintiffs counter that Mr. Olsen's April 2, 2002 letter was not a request to prepay under *Franconia* because the letter was not a "complete request" as defined under ELIHPA's implementing regulations.  Plaintiffs also argue that the letter was not a demand to prepay immediately, but instead was merely an exploratory step contingent on a sale of the projects.  In addition, plaintiffs argues that the government instructing the plaintiffs to file prepayment requests under ELIHPA's regulation was not a rejection

because the government left open the possibility that the plaintiff would  be allowed to prepay.

Because plaintiff's arguments are contrary to binding precedent, the court finds in favor of the government.  Plaintiffs argue that the prepayment process—and thus the time of breach—begins when, pursuant to ELIHPA's implementing regulations, the owner of a property submits a "complete prepayment request" that included an "anticipated payment date" more than 180 days after the request is submitted.  *See* 7 C.F.R. § 1965.206(c).  Because plaintiff did not comply with ELIHPA's requirements in submitting their request, plaintiffs argue, there has been no "clear conditional offer[] of payment" in this case.  Pls.' Supp. Mem. 5-6 (quoting *Tamerlane*, 550 F.3d at 1142).  However, as the government argues, this position is directly contrary to precedent from the Federal Circuit.

In *Tamerlane v. United States*, the Federal Circuit clarified the Supreme Court's holding in *Franconia* and explained the circumstances under which a section 515 contract is breached.  The *Tamerlane* court noted that ELIHPA represented "Congress' clear repudiation of the unfettered right to prepay . . . ."  550 F.3d at 1143.  As a result, the court found that "[t]he *Franconia* decision requires no more formalism than the written request to prepay followed by non-acceptance of the request by the government to trigger the running of the statute of limitations."  550 F.3d at 1143.  In that case, the court found that a section 515 borrower's letters to FmHA, which stated that they were making a "request to pay off the remaining mortgage balance" of two loans "constituted clear, unconditional offers of prepayment sufficient to trigger a duty by the government to

accept the tender under the terms of the pre-1979 loans." 550 F.3d at 1142-43. The Circuit further held that FmHA's response of offering the plaintiffs an incentive loan to stay in the program was a breach of the plaintiffs' agreement. *Id*. However, the court was also careful to note that the incentive process was not the only way in which the government could breach its agreement to accept prepayment. *See id.* ("Although *other conduct could constitute breach* by the government, the Court of Federal Claims correctly ruled that at least by . . . the dates that [plaintiffs] entered into ELIHPA loans, breach triggering rejections had occurred. (emphasis added)).

*Tamerlane* and *Franconia* both found that requiring borrowers to comply with ELIHPA's regulatory scheme was a breach of a section 515 borrower's unfettered right to prepay under the contract. In that light, plaintiffs' argument that they must have first complied with ELIHPA's requirements in order for there to have been a breach is nonsensical because requiring plaintiffs to comply with ELIHPA in the first place is the breach. Because of ELIHPA's requirements, plaintiffs and similarly-situated borrowers were unable to command market prices for their projects because the borrowers could not know if they would be able to leave the program. Indeed, plaintiffs' own complaint states the damages from the government's action in terms of lost opportunity to sell or make other use of the property. *See* Comp. ¶ 68 (listing, among other damages, the "lost opportunity costs associated with investment and business opportunities each plaintiff has been foreclosed from pursuing by virtue of its inability to exercise its contractual right to terminate its contract at any time as its option.")

Therefore, the court must reject plaintiffs' argument that there could have been no breach because plaintiffs' did not submit a "complete request" pursuant to ELIHPA's implementing regulations.[2]  The court thus now turns to the question of whether plaintiffs' April 2, 2002 letter was an attempt to prepay as defined in *Tamerlane*, and if so, whether the government's April 12, 2002 response was a non-acceptance of that request triggering a breach and starting the running of the six-year statute of limitations.

### C.    The Statute of Limitations Bars Plaintiffs' Claims

To show that the statute of limitations has expired on plaintiffs' claims, the government must establish 1) the plaintiffs attempted to exercise their unfettered right to prepay their mortgages, and 2) the attempt was met with non-acceptance.  *Tamerlane*, 550 F.3d at 1143.  As explained below, the government has shown both elements.

### 1.    Mr. Olsen's April 2, 2002 letter was an attempt to prepay under *Tamerlane*

In his April 2, 2002 letter to the agency, Mr. Olsen stated: "We ask that you approve[] our request to pay off the mortgage(s) on the above-captioned developments . . . . Our intent is to convert these units into conventional housing." Def.'s Mot. App'x 1. The government argues that the correspondence between the plaintiffs and the government is virtually identical to the correspondence between the parties in *Tamerlane*, which the Federal Circuit found had triggered a breach.  Relying principally upon

---

[2] The plaintiffs' argument that they must first comply with ELIHPA before triggering the breach is very similar to the rejected defense the government offered in *Franconia II* on remand from the Supreme Court.  *Franconia II*, 61 Fed. Cl. at 733 n. 21 (rejecting the government's argument that ELIHPA, in the government's estimation, "merely elongate[ed] somewhat the process for prepaying a loan" and was therefore not a breach).

*Parkwood*, 97 Fed. Cl. 809, 817-18 (2011), *Ramona Investment Group v. United States*, 115 Fed. Cl. 704 (2014), and *Kasarsky v. Merit Systems Protection Board*, 296 F.3d 1331, 1336 (Fed. Cir. 2002), plaintiffs argue that Mr. Olsen's prepayment request cannot trigger a breach, because it did not specify a prepayment date.  Pl. Opp. at 11-13. Plaintiffs further argue that Mr. Olsen was not seeking to immediately prepay the mortgages at the time he sent his April 2, 2002 letter, but was merely exploring a possibility contingent on a potential sale that was never consummated.  Both of the plaintiffs' arguments lack merit.

The Federal Circuit made clear in *Tamerlane* that "[t]he *Franconia* decision requires no more formalism than the written request to prepay followed by non-acceptance of the request by the government to trigger the running of the statute of limitations."  550 F.3d at 1143.  None of the cases plaintiffs cite stand for the proposition that a prepayment request must include an express prepayment date in order for a breach to occur.  In *Tamerlane*, the Federal Circuit held that separate letters from two borrowers stating that "[t]his letter will serve as a request to pay off the remaining mortgage balance for [the respective property]" constituted valid prepayment requests under *Franconia*. *Tamerlane*, 550 F.3d at 1142.  Although the letters in *Tamerlane* did not specify an anticipated prepayment date, the circuit explained that the letters "were clear, unconditional offers of prepayment sufficient to trigger a duty by the government to accept the tender under the terms of the pre-1979 loans."  *Id*. at 1143.

Plaintiffs' contention that prepayment requests must specify a prepayment date is, therefore, erroneous, and the cases plaintiffs rely upon do not change this result.  It is true

that the courts in *Parkwood* and *Ramona* both found that breaches occurred on the dates specified by the plaintiffs as their anticipated prepayment dates, s*ee Ramona*, 115 Fed. Cl. at 708; *Parkwood*, 97 Fed. Cl. at 817-18.  However, neither of these cases held that including a date for prepayment was required to trigger a breach.  Rather, it just so happened that the plaintiffs in those cases *chose* to submit formal prepayment applications that conformed to ELIHPA, which requires listing an anticipated prepayment date in order for the request to be deemed complete.  *See* 7 C.F.R. § 1965.205(c); *see also* Pls.' Opp. 4.  As discussed above, however, *Tamerlane* does not require a borrower to comply with ELIHPA as a prerequisite for the government's breach, nor did the plaintiffs in *Tamerlane* include a date for prepayment in the letters the court found constituted a request to prepay.

Because of the holding in *Tamerlane*, plaintiffs' argument that Mr. Olsen did not intend to make a prepayment request but was simply exploring the possibility of prepayment is also misplaced.  Mr. Olsen's subjective intentions or beliefs are irrelevant. "As with general contract principles, the subjective intent of the parties is immaterial to whether a contract has been breached."  *Tamerlane*, 550 F.3d at 1144 n.15; *accord Parkwood*, 97 Fed. Cl. at 817 ("Consistent with the objective theory of contract enforcement, the undisclosed subjective intent of the parties thus place no role in this analysis, as *Tamerlane* definitively holds.").  In *Tamerlane* and *Parkland*, the plaintiffs also claimed that when they informed the agency of their desire to prepay, they only intended to facilitate the incentive process under ELIHPA.  In each case, the court found the subjective intent of the parties irrelevant.  The *Tamerlane* court rejected plaintiffs'

argument that "the prepayment letters were just part of a mechanical process to get incentives, and were never intended to declare the government in breach of the underlying loan agreements" because the argument "appears to rely on the subjective intent of the parties with respect to whether there was a 'tender.'" *Tamerlane*, 550 F.3d at 1144, 1144 n.15.  Likewise the *Parkwood* court, in applying *Tamerlane*, "flatly reject[ed]" plaintiff's claim that the prepayment request "did not trigger the statute of limitations because they were intended only to facilitate the receipt of equity loans." *Parkwood*, 97 Fed. Cl. at 816.

Nor does *Franconia* require a section 515 borrower to be willing and able to tender payment at the time the request.  "While actually tendering prepayment is of course one method of attempting to prepay, nothing in *Franconia* identifies it as the only acceptable method."  *City Line Joint Venture v. United States*, 82 Fed. Cl. 312, 315 (2008).  Merely "filing a notice of its intent to prepay," *id.*, is sufficient to find a prepayment attempt under *Franconia* and *Tamerlane*.  This is because, as discussed above, the damages flowing from the government's breach include a loss of ability to put a project on the market because under ELIHPA, the project will most likely remain encumbered by section 515 restrictions.  *See Franconia II*, 61 Fed. Cl. at 733 n. 21 (noting that the ELIHPA process is a "cumbersome" process involving many tasks and subtasks, typically lasting several years, ending "far more often than not" with the "prepayment request [being] rejected").[3]

---

[3] Plaintiffs' request for discovery on this issue must be rejected.  There is nothing the plaintiffs could uncover that would change the fact that the April 2, 2002 letter was, by its own terms, a

For all of these reasons, the court funds that plaintiffs' April 2, 2002 letter was an attempt to prepay the loans under *Tamerlane* and triggered the government's obligation to unconditionally accept the offer.

### 2. The agency's April 17, 2002 letter was a non-acceptance of plaintiffs' attempt to prepay

The court also rejects plaintiffs' contention that there was no breach because the government failed to expressly decline the prepayment request, but instead referred plaintiffs to the ELIHPA process. Pls.' Opp. 9. Under general contract principles, a breach of contract occurs when a party to a contract *fails to perform* a contractual duty. *Franconia*, 536 U.S. at 142-43; *Kasarsky*, 296 F.3d at 1336; Restatement (Second) of Contracts § 235(2) (1981) ("When performance of a duty under a contract is due *any non-performance* is a breach." (emphasis added)). Here, the government breached the contract by *not unconditionally accepting* the prepayment request. As discussed above, the Federal Circuit explained in *Tamerlane* that all that is required for a breach to occur is a "written request to prepay followed by *non-acceptance of the request by the government* to trigger the running of the statute of limitations." 550 F.3d at 1143 (emphasis added). Thus, the government's response directing plaintiffs to complete ELIHPA's prepayment application and to submit the documents called for in RD

---

request to prepay. In Mr. Olsen's letter, he wrote that the plaintiffs "ask that you approved [*sic*] our request to pay off the mortgage(s) on the above-captioned developments." Def.'s Mot. App'x 1. This statement is clear and unambiguous. The Federal Circuit has definitively stated that "[o]utside evidence may not be brought in to create an ambiguity where the language is clear." *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1379 (Fed. Cir. 2004) (quoting *City of Tacoma v. United States*, 31 F.3d 1130, 1134 (Fed. Cir. 1994). Therefore, the court finds that no further discovery is needed on this issue.

Instruction 1965-E, *see* Def.'s Mot. App'x 2 ("The completed Exhibit C *must* be submitted along with all required items . . . ." (emphasis added)), amounted to a breach. As the Federal Circuit also explained in *Tamerlane*, because ELIHPA was already a repudiation of a prepayment contract, the government did not have to do much for the repudiation to ripen into a present breach. *See Tamerlane*, 550 F.3d at 1143 ("The degree of formalism in communications for which Appellants advocate is unnecessary given Congress' clear repudiation of the unfettered right to prepay in ELIHPA."); *City Line*, 82 Fed. Cl. at 316 (holding Government's *failure to respond* to a notice of intent to prepay was breach).

In light of the Federal Circuit's guidance, plaintiffs' argument that no breach occurred because the government never offered an incentive package as required by ELIHPA cannot prevail. The *Tamerlane* court made it clear that any "non-acceptance of the request"—not only explicit rejection—was sufficient to qualify as a breach and trigger the statute of limitations. 550 F.3d at 1143. *Tamerlane* also expressly stated that the government's non-acceptance could take multiple forms. *See id.* ("Although other conduct could constitute breach by the government, the Court of Federal Claims correctly ruled that at least by . . . the dates that [plaintiffs] entered into ELIHPA incetntive loans, breach-triggering rejections had occurred.")

Plaintiffs' reliance on *Grass Valley Terrace v. United States*, 69 Fed. Cl. 341, 354 (2005), is also misplaced. Plaintiffs cite *Grass Valley* for the proposition that a letter from the government acknowledging that plaintiff "will be able to prepay but that it must first complete certain 'items,' which are more in the nature of procedural steps," *id*., was

not a rejection triggering the start of the statute of limitations. However, as the government notes, *Grass Valley* was decided before the Federal Circuit set forth the standard for ELIHPA cases in *Tamerlane*, and in any case, is not binding precedent on this court, *see Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) (noting that prior Court of Federal Claims decisions are not binding on other cases in the Court of Federal Claims).[4]

In addition, the facts of *Grass Valley* are distinguishable from this case. In *Grass Valley*, the agency replied to the plaintiff's request for payment with more information, and stated the agency was considering the request and would issue a decision within a few months. *Grass Valley Terrace v. United States*, Def.'s Mot. to Dismiss App'x 5, 98-cv-00726, ECF No. 157 (March 11, 2005). The court found that this was not a repudiation of the contract. In this case, on the other hand, the government repudiated the plaintiff's right to unconditionally accept prepayment when it initiated the ELIHPA approval process. Plaintiffs' suggestion that there was not a repudiation because the government "left open the possibility" that an eventual prepayment request might be

---

[4] Plaintiffs' reliance on *Kasarsky* is equally misplaced. Pls.' Opp. 12. In *Kasarsky*, the Federal Circuit held that the Merit Systems Protection Board's failure to respond to an inquiry into the status of a payment of attorney fees following a settlement agreement did not constitute a breach of the agreement. *Kasarsky*, 296 F.3d at 1336. The circuit explained that no breach occurred as a result of the board's silence in-part because the plaintiff's inquiry did not contain a deadline for payment of the fees and, as noted by the court in *Parkwood*, 97 Fed. Cl. at 818, because there was "no evidence of record to suggest that the agency did not fully intend to comply with the terms of the agreement," *Kasarsky*, 296 F.3d at 1336. In this case, however, plaintiffs' prepayment request was not met with silence. Rather, the government responded to Mr. Olsen's April 2, 2002 letter by acknowledging that the letter was a prepayment request and providing information regarding ELIHPA's prepayment process.

accepted if plaintiffs first complied with ELIHPA is without merit.  Once again, *Tamerlane* makes clear that the possibility of prepayment based on compliance with ELIHPA is still a repudiation.

Accordingly, the 10 plaintiffs' claims accrued on April 17, 2002, when the government in its response failed to honor the prepayment request. *See Tamerlane*, 550 F.3d at 1143; *Parkwood*, 97 Fed. Cl. at 817-18 (holding an agency's "failure to respond to a prepayment request" could support a claim accrual); *City Line,* 82 Fed. Cl. at 315-16 (holding that a claim accrued on the date that the borrower submitted a formal request to prepay).

### D.      Bloomfield had an unfettered right to prepay its mortgage when the government rejected its prepayment request on April 17, 2002

At the time that Mr. Olsen sent his letter to the government, the restrictive covenant requiring plaintiffs to remain in the program had expired for nine of the ten plaintiffs the government now moves to dismiss from this case.  Pls.' Supp. Mem. 2.  The government initially sought to dismiss all eleven plaintiffs Mr. Olsen represented in his April 2, 2002 letter.  However, in its supplemental brief, the government acknowledged that one plaintiff, Delta Square, had a restrictive covenant which did not expire until July 8, 2002, after the government sent the April 12, 2092 letter rejecting plaintiffs' attempt to prepay.  Because the government agreed that Delta Square did not have an "unfettered" right to a prepayment as of April 2002, the government agreed that the agency did not breach its loan agreement with Delta Square at that time.  Consequently, the government withdrew its motion as to Delta Square.

Another plaintiff, Bloomfield Partnership, had a restrictive covenant that expired on April 12, 2002—ten days after Mr. Olsen sent his letter but five days before the agency responded.  The government argues that the government breached the agreement to accept prepayment when it responded on April 17, 2002, and because Bloomfield Partnership had an unfettered right to prepay by the time the government refused to accept payment.  Therefore, the government argues, the statute of limitations began to run for Bloomfield and the other plaintiffs as of that date.  The plaintiffs argue that Bloomfield Partnership should not be dismissed from this case because, even assuming that Mr. Olson's letter was a prepayment request, because Bloomfield did not have an unfettered right to prepay its mortgage at the time the letter was sent to the agency.

The court agrees with the government and finds that Bloomfield Partnership is in the same position as the other nine plaintiffs which were denied the right to prepay by the government after the 20 year restriction had expired.  It is the interference with a borrower's *unfettered* right to prepay that breaches the contract.  *See Tamerlane*, 550 F.3d at 1143.  Here, a breach occurred when the government failed to unconditionally accept the plaintiffs' prepayment request.  *See id.* at 1142.  Because Bloomfield Properties had an unfettered right to prepay at the time of the government's rejection, the government breached the contract and statute of limitation began to run as of that date.

## III.   CONCLUSION

For the reasons stated above, the court agrees that the claims of the following plaintiffs are untimely: Bayou des Glaises, Ltd.; Bloomfield Partnership II; Clifford E. Olsen – College Towne; Clifford E. Olsen – Collins Square; Clifford E. Olsen –

Hammond Towne; Clifford E. Olsen – Jefferson South; Clifford E. Olsen – Old Man River; Clifford E. Olsen – Walker Partnership; Clifford E. Olsen 1977-B; and Cypress Cove Association and must be dismissed for lack of subject-matter jurisdiction. The government's motion with regard to these plaintiffs is **GRANTED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge